*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *TERESA A. M.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:19-cv-00292-LEW* |
| | ) | |
| *ANDREW M. SAUL,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

*REPORT AND RECOMMENDED DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in weighing the opinion evidence of record and evaluating her subjective allegations, undermining his determination of her residual functional capacity ("RFC"). *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 14) at 15-27. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of degenerative disc disease, status-post

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

cholecystectomy with diarrhea, migraines/occipital neuralgia, a vertiginous disorder, fibromyalgia, depression, and anxiety, Finding 2, Record at 14; that she had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that she could occasionally climb ladders, ropes, scaffolds, ramps, and stairs, occasionally balance, stoop, kneel, crouch, and crawl, should avoid even moderate exposure to hazards, should have access to a restroom, and was able to understand and remember simple instructions and tasks, maintain attention and concentration for two-hour increments throughout an eight-hour workday and 40-hour workweek, interact with coworkers and supervisors, occasionally interact with the general public, and adapt to routine changes in the workplace, Finding 4, *id*. at 17; that, considering her age (50 years old, defined as an individual closely approaching advanced age) on the date her disability application was filed, February 10, 2017, education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 27; and that she, therefore, had not been disabled from February 10, 2017, the date her application was filed, through the date of the decision, October 29, 2018, Finding 10, *id*. at 28. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

2

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.   20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.   The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.   *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.   Discussion

### A.   Weighing of Opinion Evidence

Absent a material error in an ALJ's resolution of conflicts in the evidence, including the expert opinion evidence of record, this court defers to an ALJ's weighing of such evidence – the core duty of an ALJ.   *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.   But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.").

The plaintiff contends that the ALJ erred in adopting the opinions of four agency nonexamining consultants who had not reviewed the totality of the record and rejecting the opinions of several treating sources supporting her claim of disability.   *See* Statement of Errors at 15-24.   I find no reversible error in the ALJ's weighing of that evidence.   The plaintiff's bid for remand on this basis, accordingly, amounts to an invitation to the court to reweigh the evidence, which the court must decline.

### 1.  Agency Nonexamining Consultants

The ALJ gave "great weight" to the opinions of agency nonexamining consultants Donald Trumbull, M.D., Archibald Green, D.O., Brian Stahl, Ph.D., and David Houston, Ph.D., adopting the Trumbull and Green physical RFC assessments and the Stahl and Houston mental RFC assessments.  *See* Record at 21-22.   The plaintiff contends that the adoption of the Trumbull and Green RFC assessments was error because (i) the ALJ should have given controlling, or greater, weight to the opinions of treating sources than to nonexamining consultants, (ii) Drs. Trumbull and Green are not specialists in the relevant areas of medicine, (iii) they had reviewed only nine months of records from the period at issue, and (iv) "opinions from non-examining consultants who review a markedly developed record cannot be given greater weight than the well-supported opinions from treating physicians, including a specialist."  Statement of Errors at 15, 19.  She likewise faults the ALJ's adoption of the opinions of Drs. Stahl and Houston over that of her treating psychiatrist, noting that Drs. Stahl and Houston reviewed the file on April 21, 2017, and December 6, 2017, respectively, when it did not include any behavioral health treatment notes after September 2017, and arguing that "[f]indings from non-treating, non-examining sources who review a limited medical record are not substantial evidence in the face of well-supported opinions from a treating specialist[.]"  *Id*. at 22.

"[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC."  *Patrick M. v. Saul*, Docket No. 1:18-cv-497-NT, 2019 WL 3997260, at *3 (D. Me. Aug. 23, 2019) (citation and internal quotation marks omitted). "However, courts in this Circuit have found that an ALJ may rely on a non-examining expert's opinion that is based on older records if the older evidence remains accurate, including where (1) there are not direct contradictions between the reports, such that the newer

4

evidence is essentially cumulative of the older evidence, or (2) the newer reports show some measure of improvement in the claimant's condition." *Id.* (citations and internal quotation marks omitted).

For the reasons discussed below, I find that, to the extent that the plaintiff challenges the ALJ's handling of certain treating source opinions, the ALJ supportably accorded them little weight. That the agency nonexamining consultants were neither treating nor examining sources did not, in itself, preclude the ALJ from according their opinions great weight. *See, e.g., id.* at *3. Finally, while the consultants did not have the benefit of review of the entirety of the medical evidence of record, the ALJ acknowledged that fact, explaining that he deemed their assessments consistent with later-submitted evidence. *See* Record at 21-22.[2] The plaintiff neither addresses the ALJ's rationale for so concluding nor identifies specific unseen evidence calling their conclusions into question, *see* Statement of Errors at 19, 22, falling short of demonstrating that the ALJ's reliance on the opinions of Drs. Trumbull, Green, Stahl, and Houston was misplaced, *see, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do

---

[2] With respect to the Trumbull and Green opinions, the ALJ explained, "While additional treatment notes were admitted to the record after they performed their record reviews, as discussed above, these additional treatment notes do not reflect any meaningful change or deterioration in the [plaintiff]'s presentation." Record at 21-22 (citations omitted). With respect to the Stahl and Houston opinions, he stated, "Additional treatment notes were admitted to the record after Dr. Stahl performed his review in April 2017 and after Dr. Houston performed his review in December 2017, but, as discussed above, these additional treatment notes do not reflect any meaningful change or deterioration in the [plaintiff]'s presentation. For example, the [plaintiff] has generally presented within normal limits on mental status examinations despite her reported symptoms. She has also reported engaging in a wide variety of daily activities that are inconsistent with more functionally disabling mental limitations." *Id.* at 22 (citations omitted).

counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted).[3]

## 2. Treating Sources

Pursuant to regulations in effect as of February 10, 2017, when the plaintiff filed her disability application, *see* Record at 12, a treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[,]" 20 C.F.R. § 416.927(c)(2).  When a treating source's opinion is not given controlling weight, it is to be weighed in accordance with enumerated factors.  *See id.* § 416.927(c).[4]  An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for doing so.  *See, e.g., id.* § 416.927(c)(2) ("[The commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] a [claimant's] treating source's medical opinion.").[5]

The plaintiff challenges the ALJ's assignment of little weight to the opinions of treating neurologist Anthony Knox, M.D., and treating primary care physician Nicole Warren, M.D.,

---

[3] During rebuttal at oral argument, the plaintiff's counsel contended for the first time that the agency nonexamining consultants' opinions could not serve as substantial evidence of the plaintiff's RFC because they had not had the benefit of review of the treating source opinions submitted subsequent to theirs, which might have caused them to reconsider their conclusions.  This point, as noted above, is waived.  In any event, it is unavailing on the merits because the ALJ properly discounted the challenged treating source opinions.  *See Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *8-9 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Mar. 5, 2009) (no error in reliance on opinions of agency nonexamining consultants when unseen records were either cumulative of those seen or reflected improvement in claimant's condition and functionality, and unseen treating source opinions reflecting greater restrictions were supportably rejected by ALJ).

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others.  *See* 20 C.F.R. § 416.927(c).

[5] The quoted regulations were superseded as to claims filed on or after March 27, 2017, by 20 C.F.R. § 416.920c, pursuant to which the commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]"  20 C.F.R. § 416.920c.

bearing on her migraine headaches, treating psychiatrist Marc Kaplan, D.O., bearing on her mental impairments, and treating physician's assistant Caitlin Phelps, P.A.-C., bearing on her diarrhea due to irritable bowel syndrome ("IBS").  *See* Statement of Errors at 15-24.  I find no reason to disturb the ALJ's assessment of the weight to be accorded these opinions.

### a.   Drs. Warren and Knox: Migraine Headaches

The ALJ gave "little weight" to Dr. Warren's July 2017 headache questionnaire and Dr. Knox's August 2018 opinion concerning the impact of her migraines, tension headaches, occipital neuralgia, and myofascial pain.  Record at 23-24.

The ALJ noted that Dr. Warren opined that the plaintiff "experiences weekly headaches that can last hours to days at a time; her headaches frequently interfere with her attention and concentration; she is capable of a low stress job; and she will be absent more than 3 days per month due to headaches."  *Id*. at 23.  However, he observed that her opinion was more than a year old and "not consistent with nor supported by the longitudinal evidence of record, which reflects that the [plaintiff]'s treatment regimen significantly reduced the intensity and frequency of her headaches."  *Id*. (citations omitted).  He further explained that "her opinion regarding the [plaintiff]'s absenteeism and attention and concentration is inconsistent with the [plaintiff]'s reported daily activities, including being the caretaker for her adult daughter, caring for her four grandchildren, attending church groups, making business plans, and selling Tupperware."  *Id*. (citations omitted).

The ALJ observed that Dr. Knox described the plaintiff as "suffer[ing] from chronic, intractable migraines as well as tension headaches, occipital neuralgia, and myofascial pain[,]" indicating that her headaches were "severely intense and occur daily[,]" "she has associated symptoms of vertigo, nausea/vomiting, malaise, photosensitivity, visual disturbances, mood

changes, and mental confusion[,]" and she "only receives a 50% reduction in headache days with Botox treatment." *Id*. at 24. He added that Dr. Knox "opined that the [plaintiff]'s headaches are severe enough to interfere with attention and concentration frequently, she would be unable to perform even basic work activities when she has a headache, and she would be absent from work more than 3 days per month." *Id*.

However, he explained that, while Dr. Knox was the plaintiff's treating neurologist and had provided a more recent opinion, he accorded it little weight because it (i) was inconsistent with Dr. Knox's own treatment notes, other treatment notes, and the plaintiff's testimony, (ii) appeared to be based on the plaintiff's subjective reports, and (iii) was inconsistent with the plaintiff's reported activities. *See id*. at 24-25.

The plaintiff asserts that the ALJ erred in (i) rejecting the Warren and Knox opinions because they were based in part on her subjective statements when "[m]igraine headaches are not documented by any particular objective tests or even shown through clinical examinations[,]" (ii) relying on improvement with Botox treatments when, while such treatments help, they have not eliminated her headaches, which would be exacerbated during full-time work by headache triggers such as lights, certain foods, noise, strong odors, lack of sleep, hunger, and weather changes, and (iii) relying on some minimal activities of daily living that did not undermine the Knox or Warren opinions. *See* Statement of Errors at 17-18. She contends that the Warren and Knox opinions should have been controlling weight or, at the least, deference pursuant to analysis of the relevant factors. *See id*. at 19-20.[6]

---

[6] I do not construe the statement of errors to challenge the ALJ's assignment of little weight to either Dr. Warren's July 2017 impairment questionnaire regarding sleep disorders or her October 2017 narrative letter indicating that the plaintiff's treatment had been "helpful, but not curative," and that the plaintiff had "limitations in prolonged sitting and standing, positional maneuvers (bending and squatting), and activities that required prolonged focused attention." *Compare* Record at 23-24 *with* Statement of Errors at 15-20. The commissioner agrees that the plaintiff does not challenge the July 2017 sleep disorder questionnaire but notes that that "the ALJ provided an extensive explanation

Nonetheless, as the commissioner rejoins, *see* Opposition at 3, 9-10, the ALJ supportably deemed the Warren and Knox opinions inconsistent with the medical evidence of record, depriving them of controlling weight and supplying a good reason to discount them.  The ALJ noted that, contrary to both opinions, the longitudinal evidence of record, including Drs. Knox's and Warren's own treatment notes, reflected that the plaintiff's "treatment regimen significantly reduced the intensity and frequency of her headaches."  Record at 23 (citing, *inter alia*, Exh. 17F at 4-5; Exh. 26F at 1; Exh. 34F at 85; Exh. 45F at 3; Exh. 48F at 15); *see also id.* at 815 (Exh. 17F at 5) (November 7, 2017, note of Dr. Warren describing migraines as "[m]anaged by neurology and has good effect w/ botox and trigger point injections in conjunction w/ medication therapy w/ topamax, amitriptyline, and PRN [as needed] triptan"), *id.* at 1258 (Exh. 26F at 1) (May 23, 2018, note of neurologist Pantcho G. Maslinski, M.D., that plaintiff's migraines were "not that bad, she had bad one last week, she have few regular headaches[,]" "[h]er migraines are few per month, and regular headaches few times per weeks"), *id.* at 2712 (Exh. 34F at 85) (July 17, 2017, note of Dr. Warren describing migraines as "[m]anaged by neurology, stable on current medications and botox therapy"), *id.* at 3231 (Exh. 45F at 3) (July 31, 2018, note of Dr. Warren assessing migraines as "not intractable"; describing them as "[m]anaged by neurology and has good effect w/ botox and trigger point injections in conjunction w/ medication therapy w/ topamax, amitriptyline, and PRN

---

as to why it was neither consistent with nor supported by the evidence of record, including her activities of daily living."  Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 4 (citation omitted). The commissioner addresses the merits of the ALJ's handling of the October 2017 letter, asserting that the assignment of little weight to that opinion is supported by substantial evidence, the ALJ having noted that (i) the letter was "'over one year old and . . . not reflective of the evidence contained in more recent treatment notes[,]'" (ii) Dr. Warren did not quantify the number of headache days the plaintiff experienced per month and stated that she was unable to make an assessment of complete disability, and, (iii) as in the case of Dr. Warren's other opinions, her October 2017 opinion was inconsistent with the longitudinal evidence reflecting the management and control of her conditions with various treatment regimens and her ability to engage in a wide variety of activities of daily living.  *Id.* at 5 (quoting Record at 24).  To the extent that the plaintiff has not waived any challenge to the ALJ's handling of the October 2017 letter, I agree that the ALJ's handling of that opinion is supported by substantial evidence.

[as needed] triptan"); *id*. at 3282 (Exh. 48F at 15) (June 18, 2018, note of Dr. Knox that, although

the plaintiff was not at optimal management of her migraines, she reported "a significant reduction

in her overall headache frequency and intensity").[7]

The ALJ provided additional good reasons for declining to adopt the Warren and Knox

opinions.  First, as the commissioner notes, *see* Opposition at 6, the ALJ did not discount either

opinion on the basis of lack of corroboration by objective testing or clinical examination, *see*

Record at 23-25.  While he did note that "Dr. Knox's opinion appears to be based on the

[plaintiff]'s subjective reports," he did so in the context of observing that Dr. Knox apparently had

relied on the plaintiff's report of the frequency of her headaches, which Dr. Knox had indicated he

did not know, rather than for the purpose of discounting her allegations on the basis of lack of

objective evidence of the existence of migraine headaches.  *See id*. at 25.  This, in turn, constituted

a good reason to discount the Knox opinion.  *See, e.g*., 20 C.F.R. § 416.927(c)(3) (factors relevant

to assessment of a medical opinion include supportability – *i.e.*, adequacy of explanation for the

opinion).

In addition, the ALJ permissibly relied on the plaintiff's activities of daily living.  He

reasoned, for example, that Dr. Warren's opinion regarding the frequency of the plaintiff's

headaches (that she experienced "weekly headaches that can last hours to days at a time" that

frequently interfered with her attention and concentration and would cause her to be absent more

than three days per month) was inconsistent with her "reported daily activities, including being the

caretaker for her adult daughter, caring for her four grandchildren, attending church groups,

---

[7] At oral argument, the plaintiff's counsel faulted the ALJ for adopting opinions of agency nonexamining consultants that were more than a year old and, yet, discounting the opinion of Dr. Warren in part on the basis that it was more than a year old.  I perceive no inconsistency.  The ALJ explained that treatment records unseen by the agency nonexamining consultants did not undermine their opinions because they reflected no meaningful change or deterioration in the plaintiff's condition.  *See* Record at 21.  By contrast, the ALJ noted that Dr. Warren's older opinion did not take into account records reflecting improvement.  *See id*. at 23.

making business plans, and selling Tupperware[,]" Record at 23 (citations omitted), and that Dr. Knox's opinion that she would be unable to perform even basic work activities during a headache and would be absent more than three days per month likewise was inconsistent with her reported activities and the fact that she was able to live alone and perform her activities of daily living without assistance, *see id*. at 25.

As the commissioner argues, the ALJ "'did not find the plaintiff capable of gainful employment based on [her] daily activities, but, rather, properly deemed those activities inconsistent with the limitations assessed by [Drs. Warren and Knox].'"  Opposition at 8 (quoting *Thomas P. v. Berryhill*, No. 2:18-cv-00075-GZS, 2019 WL 495582, at *5 (D. Me. Feb. 8, 2019) (rec. dec., *aff'd* Mar. 7, 2019)).  *See also, e.g., Coskery v. Berryhill*, 892 F.3d 1, 7-8 (1st Cir. 2018) (substantial evidence supported ALJ's determination that claimant's ability carry out certain activities undermined his contention that he was unable to perform light work).  Inconsistency with other record evidence, in turn, is a proper basis on which to discount a treating source's opinion. *See, e.g., Thomas P*., 2019 WL 495582, at *5 (noting, in conjunction with ALJ's reliance on claimant's activities of daily living, "'Generally, the more consistent a medical opinion is with the record as a whole [including activities of daily living], the more weight [an ALJ] will give to that medical opinion'") (quoting 20 C.F.R. § 404.1527(c)(4) (brackets in original)).[8]

The plaintiff cites *Johnson v. Astrue*, 597 F.3d 409, 414 (1st Cir. 2010), for the proposition that daily activities are not necessarily inconsistent with a finding of disability.  *See* Statement of Errors at 18.  However, *Johnson* is distinguishable in that, while the First Circuit in that case observed that a claimant's ability to engage in light housework, meal preparation, and driving short distances was not necessarily inconsistent with a physician's sitting, walking, standing, and lifting

---

[8] The regulation that applies in this case, 20 C.F.R. § 416.927(c), is identical to 20 C.F.R. § 404.1527(c).

limitations, *see Johnson*, 597 F.3d at 414, the daily activities at issue here, which included care of an adult daughter, grandchildren, making business plans, and selling Tupperware, reasonably called into question the opinion of both Drs. Warren and Knox that the plaintiff's headaches frequently interfered with her attention and concentration.

Turning to the plaintiff's assertion that, while the headache treatments help, her headaches have not been eliminated, *see* Statement of Errors at 18, the commissioner correctly observes that the ALJ did not find the plaintiff's headaches nonexistent but, rather, deemed them a severe impairment, adopting limitations assessed by Drs. Trumbull and Green to address them, including the avoidance of even moderate exposure to hazards, *see* Opposition at 8-9; Finding 4, Record at 17; *id*. at 84-86, 102-04.

### b.  Dr. Kaplan: Mental Impairments

The ALJ also gave "little weight" to the July 2017 opinion of the plaintiff's treating psychiatrist Dr. Kaplan, who indicated that the plaintiff's symptoms included "poor memory," she "had moderate to marked limitations in concentrating, persisting, and maintaining pace[,]" and she "would be absent from work more than 3 days per month."  *Id*. at 25.  The ALJ noted that Dr. Kaplan "did not explain . . . the reasoning for his opinion nor did he support it with clinical findings."  *Id*.  He deemed the Kaplan opinion inconsistent with (i) Dr. Kaplan's own mental status examinations, "which consistently noted [the plaintiff's] attention, concentration, memory, and cognition were all within normal limits[,]" (ii) "Dr. Kaplan's assessed GAF [Global Assessment of Functioning] scores, which stayed stable at 55 and which are indicative of only moderate symptoms[,]"[9] and (iii) the plaintiff's "reported daily activities throughout the record."  *Id*.

---

[9] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,

(citations omitted).  Finally, he reasoned that Dr. Kaplan's opinion that the plaintiff "would be absent from work more than 3 days per month due to her mental impairments" was "speculative and . . . not supported by the [plaintiff]'s course of treatment."  *Id.*

The plaintiff first protests that the ALJ "mischaracterized the record" in concluding that the Kaplan opinions were not supported by any reasoning or clinical findings.  Statement of Errors at 20.  She correctly notes that Dr. Kaplan checked boxes indicating signs and symptoms that supported his assessment, including depressed mood, persistent or generalized anxiety, poor memory, and insomnia, *see id.* at 20-21; Record at 3090, and provides record citations to treatment notes recording those findings, *see* Statement of Errors at 21.  However, the ALJ recognized that Dr. Kaplan had indicated that the plaintiff's symptoms included poor memory and correctly noted that he provided no explanation for his opinion.  *See id.* at 25, 3091-93.  The ALJ supportably discounted the Kaplan opinion in part on that basis.  *See, e.g.*, 20 C.F.R. § 416.927(c)(3) (factors relevant to assessment of a medical opinion include supportability – *i.e.*, adequacy of explanation for the opinion).

The plaintiff next faults the ALJ's reliance on Dr. Kaplan's repeated assessment of GAF scores of 55 as undercutting the Kaplan opinion, asserting that "GAF scores are no longer deemed reliable in either legal or medical contexts to determine the severity of an individual's impairments."  Statement of Errors at 21.  While, as noted above, the American Psychiatric Association revised the DSM to remove GAF scores in 2013, that is beside the point.  Dr. Kaplan

---

and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

chose to use the GAF scale to assess the plaintiff, and his assignment of a GAF score of 55 on numerous occasions by definition indicated moderate limitation. The ALJ supportably perceived this as clashing with Dr. Kaplan's opinion that the plaintiff's limitations in concentration, persistence, or pace were moderate to marked and that she would be absent from work more than three days a month. The discrepancy, in turn, constituted a proper basis on which to discount the opinion. *See, e.g.*, 20 C.F.R. § 416.927(c)(4) (factors relevant to assessment of a medical opinion include consistency with the record as a whole).

The plaintiff next argues that the ALJ failed to explain how Dr. Kaplan's opinion was unsupported by either her course of treatment or her daily activities and, in any event, the ALJ was not competent as a layperson to deem her medical regimen inappropriate. *See* Statement of Errors at 22. She again cites *Johnson* for the proposition that daily activities are not conclusive of the ability to work. *See id.* Nonetheless, the ALJ explained that Dr. Kaplan's opinion was inconsistent both with his own mental status examinations of the plaintiff, "which consistently noted her attention, concentration, memory, and cognition were all within normal limits[,]" and with his assessed GAF score of 55, indicative of only moderate symptoms. Record at 25 (citations omitted). The ALJ did not overstep the bounds of his competence as a layperson in noting those discrepancies as part of the exercise of evaluating sharply competing expert opinions of record.[10]

The ALJ reasonably perceived the plaintiff's activities of daily living, which included care of an adult daughter and grandchildren, making business plans, and selling Tupperware, as

---

[10] The ALJ did describe Dr. Kaplan's opinion that the plaintiff would be absent from work for more than three days a month as "not supported by the [plaintiff]'s course of treatment." Record at 25. To the extent that the ALJ meant to find that the prescribed treatment regimen was inconsistent with that opinion, I agree that he overstepped the bounds of his competence as a layperson. However, any error is harmless. The ALJ discounted the opinion on the additional valid bases that it was speculative, unexplained, and clashed with findings in Dr. Kaplan's own treatment notes. *See id.*

inconsistent with Dr. Kaplan's opinion that the plaintiff would be absent from work for more than three days a month, materially distinguishing this case from *Johnson*.

The plaintiff, finally, asserts that the ALJ erred in failing to weigh the Kaplan opinion pursuant to the factors set forth in 20 C.F.R. § 416.927(c)(2), a material error because his opinion would have been given controlling or, at the least, greater weight were those factors considered. *See* Statement of Errors at 23. She posits that this is so given that Dr. Kaplan, a psychiatrist, had (i) treated her regularly since January 2017 with "appropriate psychotropic medications and extensive therapy" and (ii) cited signs and symptoms supporting his opinions, the presence which is confirmed by the longitudinal treatment record. *Id.*

The ALJ did not ignore the relevant factors. On the contrary, he acknowledged that Dr. Kaplan was the plaintiff's treating psychiatrist but, as discussed above, reasonably discounted his opinion on the basis of its lack of supportability, *i.e.*, adequacy of explanation for the opinion, and its lack of consistency with the record as a whole. *See* 20 C.F.R. § 416.927(c)(3)-(4). No more was required.

### c.  P.A. Phelps: Diarrhea due to IBS

The ALJ accorded "little weight" to the August 2018 opinion of P.A. Phelps, the plaintiff's treating gastroenterology provider, that the plaintiff "experiences daily abdominal pain associated with bowel movements as well as chronic diarrhea[,]" her "symptoms would frequently interfere with her attention and concentration[,]" her "ability to sit is limited by a need for frequent and urgent bathroom access[,]" and she "would be absent more than three times per month due to her diarrhea." Record at 22.

He detailed several reasons for discounting that opinion, including that (i) P.A. Phelps was not an acceptable medical source, (ii) her opinion was "inconsistent with the longitudinal evidence of record, which shows that the [plaintiff]'s diarrhea was manageable with Immodium[,]" (iii) her

opinion that the plaintiff experienced daily abdominal pain was inconsistent with the plaintiff's reports in the record, and (iv) her opinion was "vague as [P.A. Phelps] does not indicate how frequently the [plaintiff] has bowel movements." *Id*. at 22-23 (citations omitted).  Finally, he explained that he had adopted "[t]he only real limitation" that P.A. Phelps assessed, "the requirement that the [plaintiff] have access to a bathroom," and that he deemed her other assessed limitations "inconsistent with the longitudinal evidence of record as well as the [plaintiff]'s reported daily activities, which include[] caring for her infant grandson while his mother is at work and caring for her adult daughter." *Id*. at 23 (citations omitted).

The plaintiff argues that the ALJ erred in discounting the Phelps opinion because (i) no other expert assessed the impact of IBS on her functioning, with Drs. Trumbull and Green failing to even recognize that impairment, (ii) there is no indication that the ALJ considered the factors relevant to assessing the opinion of a non-acceptable medical source, which are the same factors used to evaluate the opinions of acceptable medical sources, and, (iii) had he done so, those factors would have weighed in favor of according her opinion greater weight.  *See* Statement of Errors at 23-24.

As the commissioner rejoins, *see* Opposition at 16-17, Drs. Trumbull and Green both considered the plaintiff's gastrointestinal impairment, adopting exertional limitations in part to account for that condition and assessing a need for proximity to bathroom facilities, *see* Record at 77, 81-82, 85-86, 94, 100, 103-04.  The ALJ duly considered the relevant factors in assessing the weight to be assigned the Phelps opinion, discounting it on the basis of lack of supportability, *i.e.*, adequacy of explanation for the opinion, and inconsistency with the record as a whole.  *See id*. at 22-23; 20 C.F.R. § 416.927(c)(3)-(4).  No more was required.

### B. Evaluation of Plaintiff's Subjective Statements

The plaintiff, finally, challenges the ALJ's partial discounting of her subjective symptoms, asserting that it is unsupported by substantial evidence because (i) "it is based largely on the same flawed reasoning that the ALJ employed to reject the opinions from every treating medical source in the record[,]" (ii) the ALJ erred in requiring evidence of "abnormal diagnostic testing to establish" that the plaintiff had "diarrhea of the frequency and severity reported due to IBS[,]" and (iii) the ALJ erred in suggesting that the plaintiff's statements regarding fibromyalgia were not credible on the basis that her symptoms fluctuate. Statement of Errors at 26-27. She notes that Social Security Ruling 12-2p recognizes that symptoms of fibromyalgia wax and wane but that this does not mean that they are not disabling, asserting that "[t]here is no evidence that any of [her] treatment resulted in significant and sustained improvement in her fibromyalgia symptoms to a degree that conflicts with her testimony regarding her level of functioning over the period at issue." *Id*. at 27.

To the extent that the plaintiff repeats arguments made above, those points fail for the same reasons in this context. Nor do her fresh points carry the day. First, and most importantly, review of an ALJ's evaluation of a claimant' subjective allegations is deferential. *See, e.g., Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Vito S. S., Jr. v. Saul*, No. 2:18-cv-00229-GZS, 2019 WL 2578077, at *2 (D. Me. June 24, 2019) (rec. dec., *aff'd* July 15, 2019) (although Social Security Ruling 16-3p eliminated the use of the term "credibility," *Frustaglia*'s deferential standard of review continues to apply). Even assuming, *arguendo*, that one or both of the plaintiff's fresh points had merit, the ALJ's determination to discount her subjective allegations is

adequately supported by the points with respect to which her challenge fails.  *See, e.g.*, *Hadley v. Astrue*, No. 2:10-cv-51-GZS, 2010 WL 5638728, at \*3 (D. Me. Dec. 30, 2010) (rec. dec., *aff'd* Jan. 24, 2011) (declining to disturb ALJ's partial discounting of claimant's subjective allegations when, even if claimant was correct in her assertion that two reasons for the finding were unsupported by the record, the ALJ supplied other well-supported reasons).

In any event, the fresh points are without merit.  As the commissioner observes, *see* Opposition at 18, the ALJ did not rely solely on testing results in discounting the plaintiff's subjective statements.  With respect to her diarrhea, he noted that the plaintiff herself had "consistently reported that her symptoms were manageable with daily Immodium" and, in February 2018, after the plaintiff's gastroenterologist recommended a FODMAPs diet, the plaintiff "reported that her abdominal symptoms were much better, with less pain, gas, and bloating" and that "her bowel frequency was reduced to 2-6 times per day[,]" Record at 18 (citations omitted).

Finally, as the commissioner argues, *see* Opposition at 19-20, the ALJ did not erroneously discount the plaintiff's fibromyalgia symptoms because they wax and wane.  He took into account the longitudinal record bearing on that impairment, observing that there was "no focused fibromyalgia examination in the record[,]" and that, for example, in June 2018, during an evaluation for back pain, a treating provider noted that "she did not have many fibromyalgia tender points on clinical examination."  Record at 18 (citations omitted).  He added that "treatment notes from 2017 reflect[ed] that the [plaintiff] reported that her fibromyalgia pain fluctuated but it was helped by her medications[,]" "[b]y April 2018, she reported that her fibromyalgia pain remained unchanged and . . . she had learned to live with it[,]" and "[b]y May 2018, [she] had started a new diet, which she subsequently reported helped with her fibromyalgia pain."  *Id*. at 18-19 (citations

omitted).  He, thus, supportably discounted any allegations by the plaintiff of greater symptoms and limitations stemming from that impairment.

Remand, accordingly, is unwarranted on the basis of this, as well as the plaintiff's other, points of error.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge